[Civ. No. 28861. First Dist., Div. Four. Apr. 15, 1971.]

CIRCLE OAKS SALES COMPANY, INC., Plaintiff and Respondent, v. BURTON E. SMITH, as Real Estate Commissioner, etc., Defendant and Appellant.

## COUNSEL

Thomas C. Lynch and Evelle J. Younger, Attorneys General, David E. Bunim and Eric Roost, Deputy Attorneys General, for Defendant and Appellant.

Severson, Werson, Berke & Melchior and Richard B. Schreiber for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Respondent took judgment against real estate broker Carl F. Alaimo for $9,500, consisting of $6,500 damages for fraud and $3,000 treble damages for conversion of a $1,000 fee advanced by respondent. Respondent applied for satisfaction of the judgment from the Real Estate Education, Research and Recovery Fund (hereinafter called "the Fund"), pursuant to Business and Professions Code, section 10470 et seq.[1] After a hearing the trial court directed the real estate commissioner to pay the entire judgment, and costs, from the Fund. The commissioner appeals, contending that the order erred insofar as it provides for payment, out of the Fund, of $2,000 in treble damages.

Section 10146 provides that a real estate broker must handle as trust funds, any fee advance collected from his principal. The section further provides that, "Where advance fees actually paid by or on behalf of any

---

[1] All statutory references are to the Business and Professions Code unless otherwise noted.

principal are not handled in accordance with the preceding paragraph, . . . [t]he principal may recover treble damages for amounts so misapplied and shall be entitled to reasonable attorneys' fees in any action brought to recover the same." It is undisputed that Alaimo violated section 10146 and that respondent was entitled to judgment against Alaimo for three times the $1,000 advance that was misapplied. But appellant contends that respondent may not recover treble damages from the Fund.

The Fund accrues from license fees and other special assessments against real estate brokers (§§ 10450.6, 10470). Eighty percent of the moneys in the Fund are allocated for education and research and 20 percent for satisfaction of judgments against insolvent brokers (§§ 10450.6, 10471 et seq.). Section 10471 provides, "When any aggrieved person obtains a final judgment . . . against any person or persons licensed under this part, under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, . . . the aggrieved person may . . . file a verified application in the court in which the judgment was entered for an order directing payment out of the Real Estate Education, Research and Recovery Fund of the amount of *actual and direct loss* in such transaction up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment, ·. . ." (Italics added.) ■ Appellant correctly points out that the language of the statute expressly limits recovery from the Fund to "actual and direct loss" and thus by implication precludes recovery of treble damages, which are punitive and exemplary in nature. There is a further indication that this was the intent of the Legislature: the statute originally provided for payment from the fund of "actual damages"; but in 1968 an amendment substituted "actual and direct loss" for "actual damages." (Stats. 1968, ch. 330, § 1, p. 712.) Under section 10471, the Fund is liable only when the judgment against the broker is based on fraud, misrepresentation, deceit or conversion of trust funds; in all these cases exemplary or punitive damages are authorized by Civil Code section 3294. The amending language is therefore meaningless unless the Legislature intended to eliminate any uncertainty as to whether "actual damages" included punitive awards by specifying "loss" rather than "damages" as the measure of recovery against the Fund. Had the Legislature intended exemplary or punitive damages to be included in an award against the Fund, it could simply have called for payment of the judgment rather than payment of "actual and direct loss."

■ While the treble damages provision of section 10146 has not been construed in previous decisions, cases interpreting similar provisions in other statutes make it clear that a treble damages award is punitive in

nature, imposed as punishment against the defendant, rather than compensation to the plaintiff. (*Drewry* v. *Welch* (1965) 236 Cal.App.2d 159, 172-173 [46 Cal.Rptr. 65]; *Ghera* v. *Sugar Pine Lumber Co.* (1964) 224 Cal.App.2d 88, 91 [36 Cal.Rptr. 305]; *Swall* v. *Anderson* (1943) 60 Cal. App.2d 825, 828 [14 P.2d 912].) ▮ In the present case the actual loss to respondent (other than the damages for fraud, not here contested) was the $1,000 fee advance. The extra $2,000 must be considered to be a punitive award. The Fund's liability for the judgment, insofar as it relates to the cause of action for conversion, was limited to the $1,000 actual loss suffered by respondent.

Respondent argues that one of the major purposes of the Real Estate Law (§ 10000 et seq.) is to raise the standards of the real estate profession by requiring its members to deal fairly and ethically with their clients (*de St. Germain* v. *Watson* (1950) 95 Cal.App.2d 862, 867 [214 P.2d 99]); limiting recovery from the Fund, it is argued, would defeat that purpose. Assessment of treble damages against an errant real estate broker or salesman would unquestionably serve the purpose of promoting ethical practices; but it is difficult to see any deterrent effect in assessing such damages against the Fund. The purpose of the Fund is to provide compensation for actual loss suffered by victims of fraud and other misconduct, not to punish individual real estate brokers; the punitive effect of the treble damages awards could only be accomplished if the broker were made to pay the penalty himself.

The order for payment from the Fund is reduced by $2,000; as so modified it is affirmed. Appellant will recover costs.

Devine, P. J., and Rattigan, J., concurred.