Filed 1/31/17

**CERTIFIED FOR PUBLICATION**



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| JEANETTE E. FULLE, | B271240 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC101181) |
| v. | |
| KAVEH M. KANANI, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Reversed and remanded.

Law Office of Dennis Ardi, Dennis Ardi; Garfield & Tepper and Scott J. Tepper, for Plaintiff and Appellant.

Nelson Griffin, Edwin C. Mann, Raymond J. Muro; Law Offices of Cleidin Z. Atanous and Cleidin Z. Atanous, for Defendant and Respondent.

_____

Respondent Kaveh Kanani shares a property line with his neighbor, appellant Jeanette Fulle. Without obtaining Fulle's permission, Kanani hired workers to cut down the limbs and branches of six trees located on Fulle's property. Fulle sued for trespass and negligence, seeking damages for injury to the trees, restoration costs, and damages for annoyance and discomfort. She sought enhanced damages under Civil Code section 3346, subdivision (a)[1] which provides trial courts with discretion to treble damages to "compensate for the actual detriment" "[f]or wrongful injuries to timber, trees, or underwood upon the land of another."

The trial court trebled Fulle's economic damages but declined to apply the multiplier to her damages for annoyance and discomfort. The court reasoned that the use of the term "actual detriment" in section 3346 limits the damage multiplier to actual economic damages and does not extend to intangible, noneconomic damages. We find no such limitation in section 3346 or the plain language of California's other applicable timber trespass statute (Code Civ. Proc., § 733). We also find no indication that the Legislature intended to limit the availability of annoyance and discomfort damages under these statutes. We conclude that annoyance and discomfort damages are subject to the statutory damage multiplier for trespass to timber, and accordingly reverse and remand the matter to the trial court.

## FACTUAL AND PROCEDURAL SUMMARY

Fulle has resided at her home in a hillside neighborhood of Encino, California since 2001. Her property is located downhill

---

[1]     All further statutory references are to the Civil Code unless otherwise indicated.

2

from a home acquired by Kanani in October 2013. The contiguous properties are demarcated by a fence. Five mature eucalyptus trees and a black walnut tree were located near the fence on the Fulle property, which provided her home with aesthetic benefits, shade, and privacy. The trees also partially blocked Kanani's view of the San Fernando Valley. Shortly after acquiring his property, Kanani hired Carlos Salvador to trim several trees. On November 16, 2013, Salvador and several workers entered the Fulle property without her permission and cut down the limbs and branches of the six trees.

Fulle filed a complaint for trespass and negligence against Kanani in January 2014. She alleged that Kanani, without obtaining her consent, directed Salvador to "cut the trees down to less than half their height and denude them of all branches and leaves," leaving "bare tree trunks" and depriving her of the "beauty, shade and privacy that that trees afforded." Fulle sought treble damages for trespass and double damages for negligence under section 3346. She also sought damages for the "annoyance and discomfort she suffer[ed] from the loss of the shade and privacy . . . and for the annoyance and discomfort she will suffer as and when repairs are made" to the property. Kanani admitted in his answer that the trees partially blocked his view and that he did not have Fulle's permission to cut them down. He admitted that the trees were cut but "denie[d] that he did so or directed that it be done."

Fulle's brief before trial further explained the remedies she sought. Because Kanani allegedly acted "willfully and maliciously" when he ordered Salvador to cut the trees, Fulle asserted that the measure of damages should be three times the "actual detriment" under section 3346. Fulle argued that the

3

eucalyptus trees were irreparably damaged and needed to be removed and replaced, which would require building a retaining wall to shore up the hillside. Her damages calculation included tree damage, loss of aesthetic benefits, and the costs of removing and replacing the eucalyptus trees, building a retaining wall, and aftercare of the trees. In addition, she sought annoyance and discomfort damages, costs of renting another house during construction, and interest.

The case was tried before a jury in November 2015. The jury found by special verdict that Kanani's agent, Salvador, cut or trimmed Fulle's trees and was acting within the scope of the agency when he did so. The jury also found that Kanani acted intentionally, willfully, and maliciously in causing Salvador to enter Fulle's property and cut or trim her trees. The jury awarded $27,500 for damage to the trees, $20,000 for the cost of repairing the harm, and $30,000 for "[p]ast noneconomic loss (including annoyance and discomfort, loss of enjoyment of the real property, inconvenience and emotional distress)."

After the verdict was read and the jury excused, Fulle moved for treble damages, and the court requested briefing on the application of section 3346. Fulle contended that the term "actual detriment" as used in the statute includes both the damage to the trees and the harm that she personally suffered as a result, thus the multiplier applied to both economic and noneconomic damages. Kanani argued that the damage multiplier should only apply to economic damages and maintained that only double damages were warranted.

The trial court entered a judgment on November 23, 2015. The judgment doubled economic damages under section 3346 but declined to apply the multiplier to noneconomic damages

4

awarded by the jury. Fulle moved to vacate the judgment and enter an amended judgment seeking to treble all damages awarded by the jury.

Following briefing by the parties, the trial court granted the motion to vacate. The court stated that it had made an error and intended to exercise its discretion to impose treble damages under section 3346. The court entered an amended judgment in February 2016, which trebled economic damages. The court, however, declined to treble noneconomic damages under the statute. The court noted that "'[d]etriment'" is generally defined by section 3282 as "a loss or harm suffered in person or property." But the use of the term "'actual detriment'" in section 3346, the court reasoned, suggested the Legislature intended to narrow recoverable damages to "actual economic damages as opposed to more intangible non-economic damages."

This timely appeal followed.

## DISCUSSION

This case presents an issue of first impression in California: whether annoyance and discomfort damages resulting from injuries to trees may be doubled or trebled under the timber trespass statutes. (§ 3346; Code Civ. Proc., § 733.)

"Statutory interpretation is a question of law that we review de novo. [Citation.] 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the

5

enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

Section 733 of the Code of Civil Procedure (section 733) was originally enacted in 1851. (See Stats. 1851, ch. 5, § 251, p. 92.) The statute was incorporated into the Code of Civil Procedure in 1872, and since has read: "Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any Court having jurisdiction." (17A West's Ann. Code Civ. Proc. (2015 ed.) foll. § 733, p. 219.)

When the Legislature adopted the Civil Code in 1872, it borrowed a similar timber trespass statute from the New York Field Code.[2] Unlike section 733, which appears to mandate treble

_____

[2] In enacting the Civil Code, the "Legislature had before it a report prepared in 1871 by the California Code Commission . . . [citation]. The commission prefaced its recommendations by observing that the majority of California's existing statutes 'have been taken, from time to time, from sister

6

damages, former Civil Code section 3346 included two damage measures: "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such a sum as would compensate for the actual detriment, except where the trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken by the authority of highway officers for the purposes of a highway; in which cases the damages are a sum equal to the actual detriment." (Former Civ. Code, § 3346, repealed by Stats. 1957, ch. 2346, § 2, p. 4076.)

Section 3346 remained unchanged until it was repealed, amended, and reenacted in 1957. (Stats. 1957, ch. 2346, § 2, p. 4076.) The new section 3346 preserved the original language regarding treble damages, but added a double damages provision. (See generally *Ghera v. Sugar Pine Lumber Co.* (1964) 224

---

States, and mostly from New York.' [Citation.] The commission proposed to continue borrowing, this time from a draft New York Civil Code, widely known as the Field Code." (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1200 (*Fluor*), italics and fn. omitted.) The Field Code timber trespass provision is identical to former section 3346. (See Commissioners of the Code, The Civil Code of the State of New York, Report Complete (1865), § 1871, p. 579.) "Despite efforts over many decades, the Field Code was never enacted in New York." (*Fluor*, at p. 1200 & fn. 33.)

Section 733 also appears to have been borrowed from a prior version of the New York Civil Code. (Compare § 733 with Former N.Y. Civ. Code, § 911 (1850) ["Every person who cuts down, or carries off, any wood or underwood, tree or timber, or girdles or otherwise injures any tree . . . on the land of another person . . . without lawful authority . . . is liable to the owner of such land . . . for treble the amount of damages, which may be assessed therefor . . . ."].)

7

Cal.App.2d 88, 89-91 (*Ghera*).)  Section 3346, subdivision (a) currently reads:  "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant in any action brought under this section had probable cause to believe that the land on which the trespass was committed was his own . . . the measure of damages shall be twice the sum as would compensate for the actual detriment, and excepting further that where the wood was taken by the authority of highway officers for the purpose of repairing a public highway or bridge upon the land or adjoining it, in which case judgment shall only be given in a sum equal to the actual detriment."

Sections 733 and 3346 were construed and harmonized in *Drewry v. Welch* (1965) 236 Cal.App.2d 159 (*Drewry*).  In that case, the court observed that the treble damages provisions in both statutes have been construed to be discretionary rather than mandatory.  (*Id.* at p. 180.)  The court further noted that section 733 has been interpreted to apply only in situations where the cutting of trees or timber was done willfully and maliciously.  (*Ibid.*)  The court concluded that "the effect of section 3346 as amended, read together with section 733, is that the Legislature intended . . . to leave the imposition of treble damages discretionary with the court, but to place a floor upon that discretion at double damages . . . .  There are now three measures of damages applicable to the pertinent types of trespass:  (1) for wilful and malicious trespass the court *may* impose treble damages but *must* impose double damages; (2) for casual and involuntary trespass, etc., the court *must* impose double

8

damages; and (3) for trespass under authority actual damages."
(*Id.* at p. 181, italics omitted; accord *Ostling v. Loring* (1994) 27
Cal.App.4th 1731, 1742 (*Ostling*).)

The measure of damages to be doubled or trebled under
sections 733 and 3346 is not limited to the value of the timber or
the damage to the trees.  The statutes have been interpreted to
permit doubling or trebling the full measure of compensable
damages for tortious injury to property.[3]  (*Salazar v. Matejcek*
(2016) 245 Cal.App.4th 634, 643 (*Salazar*); *Heninger v. Dunn*
(1980) 101 Cal.App.3d 858, 861 (*Heninger*).)  "The measure of
damages in California for tortious injury to property is 'the
amount which will compensate for all the detriment proximately
caused thereby . . . .'  (Civ. Code, § 3333.)  Such damages are
generally determined as the difference between the value of the
property before and after the injury."  (*Heninger*, at pp. 861-862.)

---

[3]     This view is consistent with the interpretation by the
courts of New York of that state's former timber trespass statute,
which appears to have been the model for section 733.  (See
*McCruden v. Rochester R. Co.* (N.Y. Cir. 1893) 5 Misc. 59, 66
[under former statute plaintiff has "the right to treble all the
damages which he might recover in the action of trespass, instead
of merely the value of the wood carried away"], citing *Van Deusen
v. Young* (1864) 29 N.Y. 9, 25.)  It also appears that the New York
courts never addressed the issue of whether noneconomic
damages resulting from timber trespass were subject to trebling
under the former statute, which was most recently revised in
2003, and now limits recovery to "treble the stumpage value of
the tree or timber or two hundred fifty dollars per tree, or both
and for any permanent and substantial damage caused to the
land or the improvements thereon as a result of such violation."
(N.Y. Real Prop. Acts. Law § 861(1); see also 2003 McKinney's
Session Law News of N.Y., Ch. 602.)

But "[d]iminution in market value . . . is not an absolute limitation; several other theories are available to fix appropriate compensation for the plaintiff's loss." (*Id.* at p. 862.)  For example, a plaintiff may recover the costs of restoring the property to its condition prior to the injury—even if such costs exceed diminution in value—so long as there is a valid "personal reason" to do so.  (*Id.* at p. 864; see, e.g., *Kallis v. Sones* (2012) 208 Cal.App.4th 1274, 1279-1281 [doubling not only the amount of damages determined for the tree, but also the amount awarded for restoring the property, including installation of a new tree and aftercare costs].)

"[A]nnoyance and discomfort" is another theory under which a plaintiff may recover damages for tortious injury to property in California.  In *Kornoff v. Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 272 (*Kornoff*), the California Supreme Court recognized that "'an occupant of land may recover damages for annoyance and discomfort that would naturally ensue . . . .'" from a trespass on the plaintiff's land.  In that case, defendant operated a cotton gin on land adjacent to plaintiffs' property.  Operating the gin caused the "lawns, flowers, shrubs, window screens, hedges and furniture" on the plaintiffs' property to be "covered with a thick coating of dust and lint and ginning waste." (*Id.* at p. 273.)  The court noted that defendant's trespass, while not of "the type to cause fright or shock or even physical illness," nevertheless caused the plaintiffs "much annoyance and discomfort."  (*Ibid.*)  Even though plaintiffs had suffered no physical injury, the court concluded they were entitled to compensation because their annoyance and discomfort was the natural and proximate cause of defendant's trespass.  (*Id.* at pp. 272-273; see also *Armitage v. Decker* (1990) 218 Cal.App.3d 887,

905 ["The general rule is simply that damages may be recovered for annoyance and distress, including mental anguish, proximately caused by a trespass"].)

In *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442 (*Kelly*), the court applied *Kornoff* in a case involving a negligently-started brushfire that destroyed dozens of trees on the plaintiff's property. (*Kelly*, at pp. 448-451, 456-459.) The jury awarded damages for the cost of restoring the property, lost rental income, tree damage, and plaintiff's annoyance and discomfort. (*Id.* at p. 450.) The court of appeal reversed the damage award for annoyance and discomfort because plaintiff did not reside on the property at the time of the fire. (*Id.* at pp. 456-459.) Although the court indicated annoyance and discomfort damages may be available in trespass cases involving injury to trees, it held that such damages are recoverable only by the "immediate [and] personal possessor" of the damaged property. (*Id.* at p. 458.)

Together, *Kornoff* and *Kelly* stand for the proposition that a plaintiff may recover damages for annoyance and discomfort proximately caused by tortious injuries to trees on her property if she was in immediate and personal possession of the property at the time of the trespass. (See *Kornoff*, *supra*, 45 Cal.2d at p. 272; *Kelly*, *supra*, 179 Cal.App.4th at pp. 456-459.) However, *Kelly* did not address the question presented in this case: whether recoverable annoyance and discomfort damages are subject to the damage multiplier for timber trespass under sections 733 and 3346.

We first turn to section 733, which provides that "[a]ny person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise injures any tree or timber on

11

the land of another person . . . is liable to the owner of such land . . . for treble the amount of damages which may be assessed therefor . . . ." The plain language of this provision is not ambiguous. It permits trebling the "amount of damages which may be assessed" for cutting down or injuring trees on another person's land. "The measure of damages for tortious injury to property, including trees, 'is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.'" (*Salazar*, *supra*, 245 Cal.App.4th at p. 643, quoting Civ. Code, § 3333; see also *Heninger*, *supra*, 101 Cal.App.3d at p. 861.) Because it is established that annoyance and discomfort damages may be assessed for tortious injuries to trees (see *Kornoff*, *supra*, 45 Cal.2d at p. 272; *Kelly*, *supra*, 179 Cal.App.4th at pp. 456-459), it follows that such damages are subject to section 733's treble damages provision.[4]

---

[4] This reading of section 733 is consistent with a recent decision by the Supreme Court of Washington authorizing treble damages for emotional distress under that state's similarly-worded timber trespass statute. (See *Pendergrast v. Matichuk* (2016) 379 P.3d 96, 101-102 (*Pendergrast*).) The Washington statute provides: "Whenever any person shall cut down . . . any tree . . . on the land of another person . . . without lawful authority, in an action by the person . . . against the person committing the trespasses . . . any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed." (Wash. Rev. Code Ann. § 64.12.030.) The court noted it is "well established . . . that emotional distress damages are available under the [Washington] timber trespass statute." (*Pendergrast*, at p. 101.) The court concluded that although "the legislature would be well within its power to limit emotional distress damages available under the timber trespass statute, it has not,"

The language of section 3346 poses a greater interpretive challenge. It states in pertinent part: "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment . . . ." (§ 3346, subd. (a).) According to Fulle, the term "actual detriment" includes both detriment to property and resulting personal harms such as annoyance and discomfort. She notes that the word "detriment" is defined by section 3282, another Civil Code provision enacted in 1872, as a "loss or harm suffered in person or property." Because annoyance and discomfort damages are recoverable for trespassory injuries to trees (see *Kelly*, *supra*, 179 Cal.App.4th at pp. 456-459), Fulle reasons that such personal harms are therefore included within the "actual detriment" subject to doubling or trebling under section 3346. The trial court disagreed with her analysis. It reasoned the use of the term "actual detriment" suggests a narrower measure of damages, and concluded the damage multiplier is consequently limited to "actual economic damages as opposed to more intangible non-economic damages."

We find no support for the proposition that the use of the term "actual detriment" in section 3346 was intended to limit the application of the damage multiplier to economic damages. The ordinary meaning of the word "actual" does not provide much guidance. It is generally defined as "existing in fact or reality" as opposed to "false or apparent." (Merriam-Webster's Online Dictionary (2017) < http://www.merriam-webster.com/dictionary/

and accordingly, "under the plain language of the statute, [plaintiff] is entitled to treble damages on all damages awarded under the timber trespass statute." (*Id.* at p. 102.)

13

actual> [as of Jan. 20, 2017]; see also Black's Law Dict. (10th ed. 2014) p. 44, col. 2 [defining "actual" as "[e]xisting in fact; real"].) A similar legal term dating back to the 18th Century, "actual damages,"[5] is defined as an "amount awarded to a complainant to compensate for a proven injury or loss" and is generally synonymous with compensatory damages as opposed to nominal or punitive damages. (Black's Law Dict., *supra*, p. 471, col. 2.) We are unable to discern whether the Legislature intended the term to carry this technical meaning.

The general purpose of section 3346 and the limited legislative history do not provide clarity. Courts have noted the purpose of the statute is "to make timber appropriation unprofitable. 'The normal use of . . . section 3346 is in cases where timber has been cut from another's land, either with or without knowledge that the cutting was wrongful. It has been suggested that the purpose of the statute is to educate blunderers (persons who mistake location of boundary lines) and to discourage rogues (persons who ignore boundary lines), to protect timber from being cut by others than the owner.'" (*Heninger*,

---

[5]     Fulle references two more recently enacted statutes trebling "actual damages" that have been interpreted to apply to damages for emotional distress and mental anguish. (See *Friddle v. Epstein* (1993) 16 Cal.App.4th 1649, 1660 ["injuries akin to those for emotional distress . . . are 'actual' damages which shall be trebled" under Pen. Code, § 637.2]; see also *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1601-1602 [damages awarded under municipal rent ordinance for mental anguish were "actual damages" subject to trebling]; but see *Balmoral Hotel Tenants Assn. v. Lee* (1990) 226 Cal.App.3d 686, 689-697 [mandatory trebling of damages for mental suffering under municipal rent ordinance may produce unconstitutionally excessive penalties; therefore "actual damages" limited to out-of-pocket expenses].)

*supra*, 101 Cal.App.3d at p. 868, quoting *Gould v. Madonna* (1970) 5 Cal.App.3d 404, 408.) When section 3346 was amended in 1957, the Legislature was primarily concerned with enhancing the statute's deterrent effect.[6] Nowhere in the legislative history do we find any discussion of the term "actual detriment" or the appropriate measure of damages subject to doubling or trebling. Whatever the Legislature meant by "actual detriment," we cannot conclude that it intended in 1872 or 1957 to prospectively bar recovery for annoyance and discomfort when this damage measure was not expressly recognized for tortious injury to trees in California until 2009 (see *Kelly*, *supra*, 179 Cal.App.4th at pp. 460-462).

Kanani contends we should narrowly interpret sections 733 and 3346. This is consistent with our courts' long-standing view that the timber trespass statutes are punitive in nature and therefore should be strictly construed. (*Ghera*, *supra*, 224 Cal.App.2d at p. 92; accord *Drewry*, *supra*, 236 Cal.App.2d at p. 172.) He notes the statutory language refers only to property damage. Section 3346 states that it applies to "wrongful injuries

_____

[6] The legislative history of Assembly Bill 2526, 1957 Session, indicates the double damages provision was added to section 3346 in order to more effectively deter timber appropriation by those who carelessly or negligently fail to accurately determine a boundary line. Assemblyman Frank P. Belotti, who introduced the bill, corresponded with several landowners and officials from the United States Department of the Interior, Bureau of Land Management (BLM) regarding the need for more effective enforcement. (See G. Kelton Steele, letter to Assemblyman Frank Belotti, Feb. 12, 1957; James Doyle, Area Administrator of the BLM, letter to Assemblyman Frank Belotti, Jul. 26, 1957; R.R. Beal, State Supervisor of the BLM, letter to Assemblyman Frank Belotti, Jul. 31, 1957.)

to timber, trees, or underwood upon the land of another, or removal thereof." Section 733 likewise refers only to damages which may be assessed against a person who cuts down or injures trees on another person's land. Because neither section mentions any type of personal harm or detriment, Kanani asserts the statutes should not be interpreted to extend to noneconomic damages such as those for annoyance and discomfort.

Fulle argues that the application of the rule of strict construction to civil penalty statutes has been called into question. In *Smith v. Superior Court* (2006) 39 Cal.4th 77, 92, the California Supreme Court declined to apply the rule when interpreting Labor Code sections 201 and 203, which subject employers to civil penalties for willful failure to pay wages to discharged employees. The court distinguished a prior decision, *Hale v. Morgan* (1978) 22 Cal.3d 388, which had adopted a narrow construction of a penalty clause that applies when a landlord cuts off a tenant's utilities (§ 789.3, subd. (b)). *Smith* noted that "[t]he rule of strict construction of penal statutes 'has generally been applied . . . to criminal statutes, rather than statutes which prescribe only civil monetary penalties.' [Citation.] . . . *Hale* . . . 'did not purport to alter the general rule that civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.' [Citation.]" (*Smith*, at p. 92.) Although *Smith* casts some doubt on the continuing application of the strict construction rule to civil penalty statutes, the rule does not inform our decision in this case.

No matter how strictly we construe section 733, the plain language of that statute explicitly authorizes trebling the "amount of damages which may be assessed" for cutting down or

16

injuring trees on another person's land.  Our cases are similarly clear that annoyance and discomfort damages may be assessed for this type of tortious injury to trees.  (See *Kornoff*, *supra*, 45 Cal.2d at p. 272; *Kelly*, *supra*, 179 Cal.App.4th at pp. 456-459.)  On the other hand, the term "actual detriment" in section 3346 is ambiguous.  This ambiguity lends itself to a potentially stricter construction.  Because section 3346 refers only to "wrongful injuries" to timber or trees, a plausible interpretation is that "actual detriment" is limited to property harm and does not extend to personal harms such as annoyance and discomfort.

We must, however, harmonize these two statutes where reasonably possible, reconcile seeming inconsistencies between them, and construe them to give force and effect to all of their provisions.  (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.)  We do not read into the plain language of section 733 any limitation based on a corresponding strict construction of section 3346.  In order to harmonize these statutes and give full effect to each, we conclude that annoyance and discomfort damages resulting from tortious injuries to timber or trees are subject to the damage multiplier under sections 733 and 3346.  Where, as here, the jury finds willful and malicious conduct by the defendant, the trial court must award double damages and has discretion to award treble damages for annoyance and discomfort.  (See *Ostling*, *supra*, 27 Cal.App.4th at p. 1742.)

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion. Appellant shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.